FILED
2024 AUG 23
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 24-2-19240-9 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

## FOR THE COUNTY OF KING

MUAZZEZ MIRASEDOGLU,
an individual,

               Plaintiff,

MICROSOFT CORPORATION, a
Washington Corporation, and

JEFF WILDER, an individual,

               Defendants.

No.: **24-2-19240-9 SEA**

COMPLAINT FOR:
1. Violation of the Fair Labor Standards Act (FLSA)
2. Violation of Washington State Laws
3. Failure to Pay Overtime Wages
4. Failure to Provide Benefits in Violation of ERISA
5. Unlawful Retaliation in Violation of the FLSA
6. Age Discrimination in Violation of ADEA
7. Age Discrimination in Violation of WLAD
8. Breach of Contract
9. Unjust enrichment
10. Discrimination Based on Gender and National Origin in Violation of Title VII and WLAD
11. Tortious Interference with Contractual Relations
12. Intentional Infliction of Emotional Distress

## I.   Parties

1. **Muazzez Mirasedoglu** ("Plaintiff"), is an individual residing in King County, Washington. Plaintiff was employed by Defendant Microsoft Corporation as a contractor, under the supervision and control of Defendant Jeff Wilder, through Easi and Actalent Services, LLC. Throughout her employment, Plaintiff was willfully misclassified as a contractor despite performing duties and being subject to the control typically reserved for full-time employees.

---

COMPLAINT

Page 1 of 11

MUAZZEZ MIRASEDOGLU
2203 12TH AVE S,
SEATTLE, WA, 98144

2. **Defendant Microsoft Corporation** ("Microsoft") is a multinational technology company incorporated under the laws of the State of Washington, with its principal place of business located in Redmond, Washington. At all relevant times, Microsoft exercised significant control over Plaintiff's employment, including her job duties, work conditions, and employment status, while willfully misclassifying her as an independent contractor or temporary worker to evade compliance with federal and state labor laws.

3. **Jeff Wilder** ("Wilder") is an individual who resides in the State of Washington and is employed by Defendant Microsoft Corporation. At all relevant times, Mr. Wilder was the Design Verification Team Manager at Microsoft and had direct supervisory authority over Plaintiff. Mr. Wilder played a central role in the misclassification of Plaintiff, enforcing Microsoft's employment policies and making significant employment decisions regarding Plaintiff's job duties, work conditions, and classification status.

4. EASI LLC. Corporation ("Easi") is a Maryland corporation with substantial business in King County, Washington. Easi employed Plaintiff and assigned her to work solely for Microsoft. While Easi is not named as defendant in this action, it is mentioned here to clarify Plaintiff's employment relationship and their role in placing at Defendant Microsoft in assigning her to Defendant Jeff Wilder's organization.

5. Bruce Gale, manager at Easi, is named as an additional party in his capacity as the manager responsible for overseeing the placement and classification of Plaintiff.

6. Arnold Campos, manager at Actalent LLC. Corporation is named as an additional party in his capacity as the manager responsible for overseeing termination process of contractors including Plaintiff.

## II.  Jurisdiction and Venue

1. Although the contract between EASI and the plaintiff provides that Maryland law applies to disputes between the parties, and that such disputes are subject to resolution via private arbitration, said provisions are not enforceable as violative of public policy under Washington law.

2. RCW 49.44.085 provides:

**Provision requiring an employee to waive right to publicly pursue cause of action is unenforceable.**

A provision of an employment contract or agreement is against public policy and is void and unenforceable if it requires an employee to waive the employee's right to publicly pursue a cause of action arising under chapter 49.60 RCW or federal antidiscrimination laws or to publicly file a complaint with the appropriate state or federal agencies, or if it requires an employee to resolve claims of discrimination in a dispute resolution process that is confidential. Under this provision, the contract's

clause committing the parties to arbitration – outside of public view – violates RCW 49.44.085. That provision is therefore unlawful and unenforceable.

Under this provision, the contract's clause committing the parties to arbitration - outside of public view - violates RCW 49.44.085. That provision is therefore unlawful and enforceable.

3. Easi may not contract the restrictions of RCW 49.44.085 by specifying that the laws of a foreign state apply

4. RCW 4.24.820 provides:

   **Nonrecognition of foreign order—Incompatibility with public policy.**

   (1) Washington's courts, administrative agencies, or any other Washington tribunal shall not recognize, base any ruling on, or enforce any order issued under foreign law, or by a foreign legal system, that is manifestly incompatible with public policy.

   (2) For purposes of this chapter, a foreign law, an order issued by a foreign legal system or foreign tribunal is presumed manifestly incompatible with public policy, when it does not, or would not, grant the parties all of the same rights, or when the enforcement of any order would result in a violation of any right, guaranteed by the Washington state and United States Constitutions.

   "It is apparent that the chief constitutional concern embodied by the public policy exception is the right to due process." Brett v. Martin, Case no. 79076-5-I (Wa. App. 2019). Further, "An order is presumed to be manifestly incompatible with public policy when it does not grant parties the same rights as the parties are granted under the Washington or United States Constitutions." Brett v. Dept. of Soc. & Health Servs., 9 Wn.App. 2d 303, 311, 455 P.3d 568 (2019)(citing RCW 4.24.820(2))

5. Washington's Superior Courts have jurisdiction over this action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., which provides federal jurisdiction over claims involving the wrongful classification of employees and the failure to pay wages and overtime. The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as these claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

6. Washington's Superior Courts have jurisdiction over the state law claims under the Revised Code of Washington (RCW) § 4.28.185 and § 49.46.005 et seq., which govern wage and hour disputes, misclassification claims, and other employment-related issues within the State of Washington.

7. Washington's Superior Courts have personal jurisdiction over Defendants because they conduct substantial business within the State of Washington, and the acts and

omissions giving rise to this action occurred within the State of Washington. Specifically, Microsoft Corporation is headquartered in Washington, and Defendants Jeff Wilder, and Easi engaged in business and employment practices within Washington State that directly affected Plaintiff.

8. Washington's Superior Courts have subject matter jurisdiction over this dispute, as the bulk of all material facts occurred in Washington. Said Courts also have personal jurisdiction over the Defendant Microsoft, who resides in Washington.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Specifically, Plaintiff performed her work for Microsoft Corporation at its headquarters in Redmond, Washington, and the unlawful employment practices alleged in this Complaint were committed within the geographic boundaries of this district.

10. Venue is also proper under RCW § 4.12.025, which provides that actions may be brought in the county where the defendant resides or where the cause of action arose. Defendant Microsoft Corporation's principal place of business is in King County, Washington, and Plaintiff's employment, along with the alleged misclassification and other unlawful acts, occurred in King County.

11. Venue is proper in King County as all material facts occurred therein.

## III. Background Facts

1. **Initial Recruitment and Interview Process:** On September 19, 2018, Plaintiff Muazzez Mirasedoglu engaged in a discussion with Easi regarding an opportunity for a Software Development Engineer in Test (SDET 3) position with Defendant Microsoft. Following this discussion, both parties agreed to proceed with the interview process. Subsequently, Easi scheduled an interview for Plaintiff with Defendant Microsoft.

2. **Interview and Offer:** On September 20, 2018, Plaintiff was interviewed onsite at Microsoft's Redmond campus by Defendant Jeff Wilder, the Design Verification Team Manager, and Hans Luchsinger, a Senior Software/Firmware Engineer under Mr. Wilder's management. On September 27, 2018, Plaintiff received and accepted an offer letter from Easi to exclusively contract her services to Defendant Microsoft for the SDET 3 position.

3. **Misclassification and Commencement of Work:** On October 10, 2018, Plaintiff commenced work for Defendant Microsoft under the direct supervision of Defendant Jeff Wilder. Despite performing the same duties as full-time employees, including handling highly confidential projects, Plaintiff was deliberately misclassified as a temporary contractor by Defendant Microsoft to evade taxes, legal liabilities, and the provision of employee benefits.

4. **Deliberate Evasion of Employee Protections:** Defendant Microsoft, fully aware of the requirements of the Fair Labor Standards Act (FLSA) due to prior audits and legal actions, willfully chose to misclassify Plaintiff as a contract worker. This decision was made to avoid providing Plaintiff with the protections and benefits afforded to employees under federal and state labor laws, including overtime pay, health benefits, and retirement contributions.

5. **Enforcement of Employee Policies:** Despite her classification as a contractor, Defendant Jeff Wilder enforced Microsoft's internal policies and rules on Plaintiff, further blurring the lines between her status as a contractor and that of a full-time employee. This included granting Plaintiff permission on September 12, 2020, to take highly confidential equipment home—a privilege typically reserved for full-time employees.

6. **Extension of Misclassification Through Work from Home Approval:** In March 2021, due to the COVID-19 pandemic, Defendant Jeff Wilder initiated and approved Plaintiff's request to work from home. The nature of Plaintiff's work involved handling sensitive materials, accessible only on-site, yet Defendants permitted her to work remotely with these materials, further demonstrating her integral role in the company and the misclassification of her employment status.

7. **Manipulation of Employment Tenure:** On March 31, 2021, as Plaintiff reached the maximum allowable tenure for temporary workers under Defendant Microsoft's policies, instead of transitioning her to a permanent employee position, Defendant Jeff Wilder, along with Bruce Gale, initiated an off-boarding request. Immediately after, they restructured her role as an external staff member, creating a new budget specifically to continue her employment while circumventing federal and state employment laws.

8. **Continued Employment Without Change in Duties:** Even after being reclassified as an external staff contractor through Actalent Services, LLC, Plaintiff continued performing the same duties under the same supervision and working conditions, with no material change other than receiving a new work laptop. This further evidences the deliberate and willful misclassification by Defendants.

9. **Rehiring Without Compliance With Hiring Protocols:** On December 12, 2020, Plaintiff was rehired by Defendant Microsoft, through Actalent Services, LLC, for the same position and duties. This rehiring was done without requiring the usual 6-month break between contracts that other contractors were subject to, further demonstrating the continuity of Plaintiff's employment and Defendants' willful intent to avoid recognizing her as an employee.

10. **Direct Control Over Work Conditions:** Defendant Jeff Wilder continued to exert significant control over Plaintiff's work conditions, including approving her request to work abroad from December 13, 2020, to February 14, 2021. This level of control, typically reserved for full-time employees, reinforces the argument that Plaintiff was, in reality, an employee rather than a contractor.

MUAZZEZ MIRASEDOGLU
2003 12TH AVE S,
SEATTLE, WA, 98144

11.  **Budget and Employment Decisions Controlled by Microsoft:** Throughout Plaintiff's tenure, critical employment decisions—including budget allocations, team assignments, and workload management—were dictated by Defendant Jeff Wilder, not by Easi or Actalent. These decisions further substantiate the claim that Defendant Microsoft was the true employer, intentionally misclassifying Plaintiff to avoid legal obligations.

12.  **Denial of FMLA Rights and Termination:** On June 19, 2023, Plaintiff requested leave under the Family and Medical Leave Act (FMLA). Her request was initially denied by Actalent, acting under the direction of Defendant Microsoft. Just days later, Defendant Jeff Wilder informed Plaintiff that her upcoming week would be her last due to budget constraints. This denial of FMLA rights and the subsequent termination decision were made in bad faith and further illustrate Defendants' willful intent to evade legal responsibilities.

13.  **Continued Manipulation and Final Termination:** Even after Plaintiff's FMLA leave was eventually approved, Defendant Jeff Wilder continued to control her employment situation, including attempts to secure temporary work for Plaintiff before her final termination on August 4, 2024. This manipulation of Plaintiff's employment status, despite her contract with Actalent specifying an end date of September 10, 2025, highlights the deliberate and ongoing nature of the misclassification by Defendants.

14.  **Pattern of Discriminatory Practices:** Throughout her employment, Plaintiff repeatedly sought to transition to a permanent role, but these requests were consistently denied under the pretext of budget constraints. However, Defendants simultaneously hired younger, full-time employees for similar roles. This pattern of hiring and employment practices demonstrates discrimination based on Plaintiff's age and protected characteristics, further compounding the wrongful misclassification.

15.  **Intentional Concealment of Employment Relationship:** At all relevant times, Easi and Actalent exercised only minimal oversight of Plaintiff's work, conducting cursory performance reviews and lacking authority over her wages, assignments, and reassignments. Defendant Microsoft, through Jeff Wilder, maintained full control over these aspects, proving that Microsoft was the true employer and that the misclassification of Plaintiff was a willful and intentional violation of the law.

## IV. Claims & Cause of Action

1. Violation of the Fair Labor Standards Act (FLSA) - Willful Misclassification
    i.  Defendants, including Microsoft and Jeff Wilder, knowingly and willfully misclassified Plaintiff as a contractor or temporary worker to avoid paying wages, overtime, and benefits that she was entitled to as an employee under the FLSA.
    ii. Defendants' actions were taken with full knowledge of the legal requirements and previous audits, indicating intentional misconduct.

COMPLAINT
Page 6 of 11

MUAZZEZ MIRASEDOGLU
2003 12TH AVE S,
SEATTLE, WA, 98144

2. Violation of Washington State Labor Laws -- Misclassification
    i. Under Washington state law, Defendants' misclassification of Plaintiff as a contractor deprived her of wages, overtime, and benefits, including those mandated under the Washington Minimum Wage Act and other applicable state labor laws.
3. Failure to Pay Overtime Wages in Violation of the FLSA
    i. Plaintiff worked overtime hours but was not compensated at the legally required rate for those hours, in direct violation of the FLSA. Defendants failed to track and pay for overtime, exacerbating the willful misclassification.
4. Failure to Provide Benefits in Violation of the Employee Retirement Income Security Act (ERISA)
    i. As a misclassified employee, Plaintiff was unlawfully denied participation in employee benefits plans, including retirement and health benefits, in violation of ERISA. Defendants deliberately structured Plaintiff's employment to avoid these obligations.
5. Unlawful Retaliation in Violation of the FLSA
    i. Plaintiff faced adverse employment actions, including isolation, reduction in duties, and eventual termination after asserting her rights or questioning her classification, constituting unlawful retaliation under the FLSA.
6. Age Discrimination in Violation of the Age Discrimination in Employment Act (ADEA) and Washington Law Against Discrimination (WLAD)
    i. Plaintiff, who was over 40 years old, was subjected to discriminatory practices based on her age. Defendants hired younger workers for similar positions, despite citing budgetary reasons for not transitioning Plaintiff to a permanent role.
7. Violation of the Family and Medical Leave Act (FMLA)
    i. Defendants unlawfully denied Plaintiff her rights under the FMLA, including initially denying her leave and later terminating her employment during her FMLA leave period. This denial was in bad faith and in violation of federal law.
8. Breach of Contract
    i. Defendants breached their contractual obligations to Plaintiff by failing to provide the agreed-upon employment terms, including job security and benefits. The termination of Plaintiff before the contract end date, despite budget availability, constitutes a breach.
9. Unjust Enrichment
    i. Defendants were unjustly enriched by Plaintiff's labor while depriving her of the compensation, benefits, and protections due to her as a misclassified employee. Defendants profited from Plaintiff's work without providing corresponding remuneration and benefits.
10. Discrimination Based on Gender and National Origin in Violation of Title VII of the Civil Rights Act and WLAD
    i. Plaintiff was subjected to discriminatory practices based on her gender and national origin, including differential treatment in hiring, promotions, and job

assignments compared to similarly situated employees. These actions violated Title VII and WLAD.

11. Tortious Interference with Contractual Relations

    i.    Defendants, particularly Jeff Wilder, intentionally interfered with Plaintiff's contractual relationship with EASI and Actalent by dictating her employment conditions and reassignments, leading to her eventual termination.

12. Intentional Infliction of Emotional Distress

    i.    Defendants' conduct, including wrongful termination, discrimination, and the denial of rights and benefits, was outrageous and intentional, causing Plaintiff significant emotional distress.

## V. Damages

As a direct and proximate result of Defendants' unlawful conduct, including the willful misclassification of Plaintiff Muazzez Mirasedoglu as a temporary worker or a contractor, Plaintiff has suffered significant damages, including but not limited to the following:

1. **Economic Damages:**

- **Unpaid Wages and Overtime Compensation:**

  o    Plaintiff is entitled to recover all unpaid wages, including regular wages and overtime compensation, that were wrongfully withheld due to Defendants' misclassification of her employment status. The total amount of these unpaid wages will be determined at trial but is estimated to be substantial, given the duration of Plaintiff's misclassification and the number of hours worked.

- **Loss of Benefits:**

  o    As a misclassified worker, Plaintiff was unlawfully denied access to employee benefits, including but not limited to health insurance, retirement contributions, paid time off, and other employee benefits that she would have received had she been properly classified as an employee. Plaintiff is entitled to recover the value of these lost benefits, which will be calculated based on the benefits package offered to similarly situated employees at Defendant Microsoft.

- **Loss of Employment Opportunities:**

  o    Plaintiff suffered economic harm due to the denial of opportunities for permanent employment, promotions, and career advancement within Defendant Microsoft. These lost opportunities have resulted in a diminished earning capacity, for which Plaintiff seeks compensation.

- **Out-of-Pocket Expenses:**

MUAZZEZ MIRASEDOGLU
2003 12TH AVE S,
SEATTLE, WA, 98144

- o Plaintiff incurred significant out-of-pocket expenses as a result of Defendants' unlawful conduct, including costs related to health care, job search efforts, and other expenses that would have been covered or mitigated had she been properly classified as an employee.

2. **Compensatory Damages:**

- **Emotional Distress and Mental Anguish:**

    - o Plaintiff endured significant emotional distress, mental anguish, and loss of enjoyment of life due to Defendants' wrongful actions, including the persistent denial of her rights, the stress of financial insecurity, and the emotional impact of discriminatory treatment. Plaintiff seeks compensatory damages for the psychological and emotional harm caused by Defendants' actions.

- **Damage to Reputation and Professional Standing:**

    - o The wrongful termination and misclassification have caused damage to Plaintiff's professional reputation and standing within her industry. Plaintiff seeks compensation for the harm to her professional reputation, which has adversely affected her future employment prospects.

3. **Liquidated Damages:**

- **Double Damages Under the FLSA:**

    - o Due to the willful nature of Defendants' violations of the Fair Labor Standards Act (FLSA), Plaintiff is entitled to an award of liquidated damages equal to the amount of unpaid wages and overtime compensation. These liquidated damages are intended to compensate Plaintiff for the delay in receiving her rightful wages and to deter Defendants from engaging in similar unlawful practices in the future.

4. **Punitive Damages:**

- Plaintiff seeks punitive damages against Defendants in an amount sufficient to punish them for their willful, malicious, and reckless disregard of Plaintiff's rights under federal and state labor laws. These damages are also intended to serve as a deterrent to Defendants and other employers from engaging in similar unlawful conduct.

5. **Restitution and Disgorgement:**

- Plaintiff seeks an order requiring Defendants to disgorge all profits and benefits unjustly obtained through the misclassification of Plaintiff's employment status. Additionally, Plaintiff seeks restitution for the full value of the services she provided while misclassified as a contractor.

6. **Interest:**

MUAZZEZ MIRASEDOGLU
2003 12TH AVE S,
SEATTLE, WA, 98144

- Plaintiff seeks an award of prejudgment interest on all amounts awarded for unpaid wages, benefits, and other economic damages, as well as post-judgment interest, as provided by law.

7. **Attorneys' Fees and Costs:**

- Plaintiff seeks an award of reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action, as permitted under the FLSA, Washington State law, and other applicable statutes.

8. **Other Damages:**

- Plaintiff reserves the right to seek any other damages that may be identified and proven at trial, including any additional compensatory, consequential, or special damages arising from Defendants' unlawful actions.

## VI. Request for Relief

WHEREFORE, Plaintiff Muazzez Mirasedoglu respectfully requests that this Court grant the following reliefs:

1. **Declaratory Judgment:**

   A declaration that Defendants, including Microsoft Corporation, and Jeff Wilder, willfully misclassified Plaintiff as an contractor or temporary worker in violation of the Fair Labor Standards Act (FLSA), Washington State labor laws, and other applicable federal and state statutes.

2. **Back Pay and Unpaid Wages:**

   An award to Plaintiff of all unpaid wages, including but not limited to overtime compensation, regular wages, and any other sums that were wrongfully withheld due to Defendants' misclassification of Plaintiff, pursuant to the FLSA and Washington State law.

3. **Liquidated Damages:**

   An award of liquidated damages equal to the amount of back pay and unpaid wages, as provided under the FLSA and Washington State law, due to the willful nature of Defendants' violations.

4. **Reinstatement or Front Pay:**

   An order for reinstatement of Plaintiff to a permanent employee position with Defendants, with full benefits and protections afforded to employees. Alternatively, an award of front pay in an amount sufficient to compensate Plaintiff for the loss of future earnings due to Defendants' unlawful conduct.

5. **Compensatory Damages:**

MUAZZEZ MIRASEDOGLU
2003 12TH AVE S,
SEATTLE, WA, 98144

An award of compensatory damages to Plaintiff for the emotional distress, pain and suffering, and loss of enjoyment of life caused by Defendants' wrongful acts, including but not limited to the misclassification, denial of benefits, unlawful termination, and discriminatory practices.

6. **Punitive Damages:**

An award of punitive damages in an amount sufficient to punish Defendants for their willful, malicious, and reckless disregard of Plaintiff's rights under the law and to deter such conduct in the future.

7. **Restitution and Disgorgement:**

An order requiring Defendants to disgorge all profits and benefits unjustly obtained from their misclassification of Plaintiff and to make restitution to Plaintiff for the full value of the services she provided.

8. **Injunctive Relief:**

A permanent injunction against Defendants, prohibiting them from continuing the practice of willfully misclassifying employees as contractors or temporary workers, and requiring them to implement policies and procedures to ensure compliance with federal and state labor laws.

9. **Prejudgment and Post-Judgment Interest:**

An award of prejudgment and post-judgment interest on all amounts awarded to Plaintiff, as allowed by law.

10. **Attorneys' Fees and Costs:**

An award of reasonable attorneys' fees, costs, and expenses incurred in bringing this action, as provided by the FLSA, Washington State law, and any other applicable statutes.

11. **Other Relief:**

Any other and further relief as the Court may deem just and proper under the circumstances.

Dated August 23, 2024.                    Submitted by:

MUAZZEZ MIRASEDOGLU

COMPLAINT                                  MUAZZEZ MIRASEDOGLU
Page 11 of 11                              2003 12TH AVE S,
                                           SEATTLE, WA, 98144